**In the Interest of A.V., a Child.**

**Rhonda R. RIGGIN, LSW, Petitioner and Appellant,**

v.

**A.V. and His Parents, M.V. and C.N., and His Guardian ad Litem, Colleen Batton, Respondents and Appellees.**

**Civil No. 960075.**

Supreme Court of North Dakota.

Oct. 22, 1996.

Lonnie W. Olson, State's Attorney, Devils Lake, for petitioner and appellant.

Todd A. Schwarz of Frith, Schwarz & Steffan, Devils Lake, for respondents and appellees.

NEUMANN, Justice.

The petitioner appeals the juvenile court's dismissal of her petition claiming A.V. is a deprived child. We affirm.

On January 12, 1996, A.V., a three-month-old, was taken from a baby sitter's house to the Lake Region Clinic by his maternal grandmother because he was pale and not breathing adequately. At the clinic, the attending physician, Dr. Greves, moved A.V. to the hospital emergency room in order to stabilize his breathing. Once his breathing was stabilized, Dr. Greves observed A.V. was limp and unresponsive to external stimuli. Significantly, his eyes were unable to properly focus on objects. Dr. Greves suspected A.V. had recently suffered a seizure. A.V. underwent a spinal tap, CAT scan, EEG, and

x-rays, which revealed no signs of trauma to the scalp, skeletal trauma, bleeding, infections or a tumor mass. A.V. remained in the hospital over the weekend under the care of Dr. Petty, A.V.'s primary physician.

On January 15, 1996, A.V. was examined by Dr. VanLooy, a pediatrician in Grand Forks. Dr. VanLooy found no external trauma, but discovered a full fontanel. An MRI showed increased intercranial pressure existed due to a small right subdural hematoma.

The following day, Dr. Byers, an ophthalmologist in Grand Forks, examined A.V. Dr. Byers found the front part of A.V.'s eyes were normal, but the back part of the eyes, near the retina, were covered in blood. A.V.'s blood vessels in the back of his eyes had been ruptured, causing them to bleed. Based on the fact that A.V. had experienced possible post-traumatic seizures, increased intercranial pressure, and retinal hemorrhaging, Dr. VanLooy and Dr. Byers suspected A.V. was a victim of shaken baby syndrome.

Ramsey County Social Services investigated the case for suspected child abuse. The investigation revealed A.V. lived with his mother and his maternal grandparents, but frequently visited his father, including overnight visits. Both the paternal and maternal grandmother, a paternal aunt, the mother, the father, the baby sitter, and a friend of the parents had contact with A.V. before he was hospitalized. A.V.'s mother and father, as well as all other parties, reported there was no knowledge of anyone injuring A.V.

A petition alleging the child was deprived was brought in juvenile court. On January 23, 1996, a shelter care hearing was held. The court ruled there was probable cause to believe the child was deprived due to seizures of an unknown origin and ordered temporary custody of A.V. be placed with the maternal grandparents.

On February 27, 1996, the juvenile court held a deprivation hearing. After the petitioner presented its case, A.V.'s parents moved for a dismissal on the grounds the state failed to prove its case by clear and convincing evidence. The juvenile court granted the motion. In its findings, the juvenile court recognized the child was injured by a medical condition or physical abuse, but found there was no evidence that either parent, either intentionally or unintentionally, caused any injury. The juvenile court dismissed the case based on the fact that the petitioner was unable to show by clear and convincing evidence whether either parent had shaken the child, or whether the action was likely to continue.

The petitioner argues the juvenile court misconstrued the law in two areas. First, the petitioner insists she was not required to prove the deprivation would continue because the petitioner was not seeking to permanently terminate the parental rights. Second, the petitioner argues the juvenile court erred by requiring the petitioner to prove the parents had done the shaking. The petitioner interprets a deprived child under N.D.C.C. § 27–20–02(5) to be any child not held in proper care or control necessary for the child's health at any time. Because the evidence clearly showed the baby had been shaken, the petitioner contends she met her obligation to prove the baby was deprived.

■ Appellate review of the juvenile court is similar to trial de novo. *In Interest of K.S.*, 500 N.W.2d 603, 605 (N.D.1993). Under N.D.C.C. § 27–20–56, we must independently review the files, records, and minutes or transcripts of the evidence, giving appreciable weight to the findings of the court below. We afford the juvenile court's findings appreciable weight, but we are not bound by them. *In Interest of A.M.C.*, 391 N.W.2d 178, 179 (N.D.1986).

■ After an independent review of the juvenile court's findings and conclusions, we agree with the petitioner's first argument that in cases of deprivation, a petitioner is not required to prove the conduct will continue. Under our juvenile law, a petitioner must only show the threat of continued abuse in cases seeking long term foster care or the permanent termination of parental rights. *See* N.D.C.C. § 27–20–36(4)(d)(2); N.D.C.C. § 27–20–44(1)(b).

■ We, however, disagree with the petitioner's second argument that a deprived child is any child who, at any time, is not held in proper care or control necessary for the

child's health. Section 27–20–02(5)(a), N.D.C.C., defines a deprived child as a child who "[i]s without proper parental care or control ... or other care or control necessary for the child's physical, mental, or emotional health, or morals." According to the petitioner's argument, the phrase "or other care or control" should be interpreted to mean that if a child is injured in any person's control, a child is deprived, even if the parents did not cause the injury, or knowingly or carelessly allow others to cause the injury. The petitioner contends the mere fact the child was injured in someone's care is sufficient to find the child deprived. If we interpret the statute according to this view, it would mean parents would have to be guarantors of their child's health and well-being at all times, under any circumstances. We do not believe the legislature intended to mandate such absolute responsibility.

Instead, we interpret the phrase "or other care or control" to refer to other people who stand in the position of a parent, such as a guardian or a legal custodian. Thus, in order to find a child deprived, a petitioner must prove with clear and convincing evidence a child was without proper care of a parent, or without proper care of a person standing in the role of a parent, such as a guardian or a legal custodian. The juvenile court concluded the petitioner did not meet this burden. We agree.

■■■ The juvenile court dismissed the case after the petitioner presented its evidence. The parents were not required to present testimony or medical experts in defense of the allegations. Although we recognize the parents' evidence may have proven otherwise, based on the record before us, it appears A.V. may have been a victim of shaken baby syndrome. In recognizing this possibility, we note this court does not condone such behavior. The act of violently shaking a baby to such an extent that the child suffers serious internal injuries is a very serious and terrible tragedy. However, in order to find a child is deprived, the petitioner's burden requires more than merely proving the child has been shaken or injured. The petitioner must prove the child's injury was caused either directly by, or through the actions of, a parent or parental substitute.

According to the evidence presented, seven people had contact with the child during the period the alleged shaking probably occurred. The mother, the father, the maternal grandmother, the paternal grandmother, a paternal aunt, the baby sitter, and a friend of the parents were all in contact with A.V. in the days immediately preceding the time he was admitted to the hospital. This leaves open the possibility that five other people could have shaken the baby unbeknown to the parents. If one of these five had shaken the baby, there is no reason, based on the record, to believe the parents could have foreseen this event or should be held responsible for it. Those in contact with A.V. consisted only of close family members, a close friend, and a licensed day care provider. These are people parents normally would trust in caring for their child.

In addition, a guardian ad litem and two social workers investigated and interviewed the parties involved. Nothing in their reports or testimony disclosed any evidence that either parent injured the child or allowed it to happen. In fact, certain evidence suggested the parents were not responsible for hurting the child. In an interview with Rhonda Riggin, a Ramsey County social worker, A.V.'s mother recalled observing and communicating to the baby sitter that A.V. was in an unusually good mood on the morning of January 12, 1996. According to the petitioner's medical experts, a happy demeanor does not normally correspond with the symptoms of a recently shaken baby. The petitioner's medical experts suggested that a violent shaking would cause a baby to be fussy and lethargic.

The record also indicates that immediately after the child was taken to the hospital, the parents sought all necessary medical attention and acted as very concerned parents. According to Louise AnVarinia, a medical social worker for United Hospital in Grand Forks, A.V.'s mother and father acted very appropriately as parents, and she never had any concerns that either of them had abused A.V.

Nothing in the record establishes either parent injured their child or improperly entrusted their child to other people resulting in an injury. If A.V. was shaken, the state has not met its burden of proving by clear and convincing evidence that the parents are responsible. We, therefore, affirm the juvenile court's dismissal of the petition alleging A.V. was a deprived child.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.